UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

DARVIN DAHL, *individually and on behalf of all those similarly situated*,

    Plaintiff,

v.                                                                                     Civ. No. 22-252 GJF/KRS

PETROPLEX ACIDIZING, INC.,

    Defendant.

## ORDER DENYING MOTION TO DISMISS

THIS MATTER is before the Court upon Defendant's Motion to Dismiss [ECF 7] ("Motion"). The Motion is fully briefed. *See* ECFs 14 ("Response"), 18 ("Reply"). As discussed below, the Court concludes that (1) it has personal jurisdiction over Defendant, (2) venue is proper in this District, and (3) venue should not be transferred to the Western District of Texas. The Court will therefore **DENY** the Motion.

### I. BACKGROUND

Plaintiff's Complaint [ECF 1] alleges that he was "employed by Defendant within . . . the three-year period preceding the [April 2022] filing of [his] Complaint." Compl. at ¶ 2.1. The Complaint further alleges that, "within the actionable time period," Defendant required Plaintiff and other similarly situated employees to "perform[ ] acidizing services" in "the oil fields in various states including Texas and New Mexico." *Id.* at ¶¶ 2.3, 2.4. In addition, Plaintiff and the other "Acidizer/Treater" employees all allegedly "work[ed] long hours in the field"—as they "*all* worked in excess of 40 hours *each week* and were often scheduled to work 12 hour shifts for *weeks at a time*." *Id.* at ¶¶ 5.20, 5.24 (emphasis added). Moreover, Defendant allegedly failed to pay Plaintiff and the other Acidizer/Treaters "at the statutory rate of one and one-half times their

regular rate of pay for all hours worked more than forty (40) in a workweek." *Id.* at ¶¶ 2.4, 7.3, 8.8; *see also id.* at ¶ 5.25 (alleging Defendant instead paid these employees "on a salary-plus-daily-rate system").

Plaintiff further alleges that he and the other Acidizer/Treaters performed such underpaid overtime work "in the state of New Mexico." *Id.* at ¶¶ 2.2, 2.3, 3.1–3.3, 6.2. Consequently, the Complaint includes a cause of action under the New Mexico Minimum Wage Act, NMSA 1978, §§ 50-4-19 to 50-4-30, for the repeated instances in which Plaintiff and the other Acidizer/Treaters allegedly "worked more than 40 hours in one or more individual workweeks in the state of New Mexico" without receiving the required overtime payments. Compl. at ¶¶ 5.20, 6.2, 8. Plaintiff's remaining cause of action is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201 to 219, for the instance in which he and the other Acidizer/Treaters performed underpaid overtime work "at any location in the United States." Compl. at ¶¶ 2.4, 6.5, 7.

Defendant "is a Texas corporation with its principal place of business in Odessa, Texas," and Defendant "has a yard in Lovington, New Mexico." Mot. at 1–2, 4. Defendant's Chief Executive Officer (CEO) attested in an affidavit that "[w]hile [Defendant] does some work in New Mexico, the majority of the work, roughly 75-80%, is performed in Texas." ECF 7-1 at ¶ 6. The CEO further represented that (1) "while working for [Defendant]" Plaintiff lived in Texas and "primarily worked in Texas" and (2) "most of the Acid Treaters/Supervisors live and work in Texas, approximately 76% over the last three years"—whereas "[o]nly approximately 24% of the Acid Treaters/Supervisors over the last three years worked in New Mexico." *Id.* at ¶¶ 7, 8, 12, 13.

Defendant now requests that the Court dismiss this case for either (1) lack of personal jurisdiction or (2) improper venue. Mot. at 3–4; Reply at 2. "[A]lternatively," Defendant requests

that "venue be transferred to the United States District Court for the Western District of Texas, Midland-Odessa Division." Mot. at 3–4.

## II. PARTIES' PRIMARY ARGUMENTS

### A. Defendant's Contentions

Defendant contends that the Court lacks "specific personal jurisdiction" over Defendant because, "while [Defendant] has a yard in Lovington, New Mexico, it does not have sufficient minimum contacts with the state." *Id.* at 4; Reply at 1–6. Defendant argues that "[t]he amount of work performed by [Plaintiff] in [New Mexico] would have been so insubstantial as to prohibit . . . personal jurisdiction" because (1) "[o]nly a small percentage of [Defendant's] business is conducted in New Mexico, less than 25% on average each year"; (2) "Plaintiff primarily worked for Defendant in Texas" and "lived in Texas throughout his employment with Defendant"; and (3) "Plaintiff has failed to controvert [such factual assertions, which are found in] Defendant's affidavit." Mot. at 4; Reply at 1–5.

Defendant next asserts that venue is improper because Plaintiff "cannot show that a substantial part of the events that give rise to his claims occurred in New Mexico." Mot. at 4; Reply at 2, 4. Defendant incorporates the same points it made regarding personal jurisdiction to further argue that "[t]he amount of work performed by [Plaintiff] in [New Mexico] would have been so insubstantial" so as to render venue in this District improper. Mot at 4; Reply at 2–5.

Finally, Defendant submits that "[e]ven if venue is proper in New Mexico, this Court should transfer the case to the Western District of Texas, Midland-Odessa division because New Mexico is an inconvenient forum." Mot at 5–8; Reply at 5–8. Defendant specifically argues that venue here is inconvenient because (1) Plaintiff lives in Texas, and thus his chosen forum should be given less deference; (2) the majority of both Plaintiff and Defendant's work occurred in Texas;

3

(3) a number of Defendant's witnesses (including four potential key witnesses), as well as Defendant's records, are in Texas; (4) travel to Las Cruces, New Mexico (over 300 miles from Odessa, Texas) would increase costs (e.g., gasoline and hotel expenses and travel time); and (5) "[t]he median time from filing to disposition for civil cases in the Western District of Texas was 8.2 months, but it was 10 months in the District of New Mexico." Mot at 5–8; Reply at 5–8.

### B. Plaintiff's Contentions

For his part, Plaintiff responds that he has made the required "prima facie showing that personal jurisdiction exists." Resp. at 6–7. Plaintiff argues that such jurisdiction exists in light of his allegation that "he performed work in New Mexico"—specifically, that he (along with other Acidizer/Treaters) repeatedly worked over 40 hours per week in New Mexico without proper payment for overtime. *Id.* at 6 (citing Compl. at ¶¶ 8.1–8.10); *see also id.* (noting that Defendant was served with process in, and has a physical presence in, New Mexico). Plaintiff similarly contends that venue in this District is proper because he "plead[ed] that he performed work in [New Mexico] for which he was not properly compensated in violation of, among other things, New Mexico law." *Id.* at 7 (citing Compl. at ¶¶ 3.1–3.3, 8.1–8.10). Finally, Plaintiff asserts that "for essentially the[se] same reasons" venue should not be transferred for the convenience of parties and their witnesses—particularly as "[Plaintiff] chose to file suit in this Court" and convenience considerations do not "strongly favor" Defendant. *Id.* at 8.[1]

---

[1] Plaintiff also requests that, if the Court is "considering dismissal under Rule 12(b)(2)" for lack of jurisdiction, the Court (1) "defer ruling on [Defendant's Motion] until trial" and (2) "permit [Plaintiff] to conduct jurisdictional discovery and, perhaps, hold an evidentiary hearing if the evidence adduced so warrants." Resp. at 5–6, 8. The Court, however, is unpersuaded that it should wait until trial to decide the Motion. In addition, by denying the Motion, the Court obviates Plaintiff's need for jurisdictional discovery.

**III. APPLICABLE LAW**

  **A. Personal Jurisdiction**

  "[A] federal district court's authority to assert personal jurisdiction in most cases is linked to service of process on a defendant 'who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting Fed. R. Civ. P. 4(k)(1)(A)). "[I]n addition to satisfying this state law requirement, the exercise of personal jurisdiction must not offend the due process clause of the Fourteenth Amendment." *United States v. Botefuhr*, 309 F.3d 1263, 1271 (10th Cir. 2002) (quotation omitted). But "[b]ecause New Mexico's long-arm statute has been interpreted to extend 'as far as constitutionally permissible,'" *Good v. Fuji Fire & Marine Ins. Co.*, 271 F. App'x 756, 759 (10th Cir. 2008) (unpublished) (quoting *Tercero v. Roman Catholic Diocese*, 132 N.M. 312, 316 (N.M. 2002)), the personal jurisdiction analysis "collapses into a single due process analysis under the Constitution." *Botefuhr*, 309 F.3d at 1271 (quotation omitted).

    1. <u>Sufficient Minimum Contacts</u>

  "Consistent with due process, a court may exercise specific personal jurisdiction over a non-resident defendant only when that defendant has the requisite 'minimum contacts' with the forum state, such that having to defend the lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Eighteen Seventy, LP v. Jayson*, 32 F.4th 956, 965 (10th Cir. 2022) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).[2] "[T]he Supreme Court has instructed that the 'minimum contacts' standard requires, first, that the out-of-state defendant

---

[2] Because the Court concludes that it has *specific* jurisdiction over Defendants, it need not address whether it also might have "*general* jurisdiction over [them]." *Eighteen Seventy*, 32 F.4th at 965 n.8 (emphasis added) (observing that "the relevant inquiry in [the general jurisdiction] context is whether a defendant was 'essentially at home' in a forum state" (quotation omitted)).

5

must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' [a] defendant's forum-related activities.'" *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Although the "purposefully directed" analysis "can appear in different guises," "[i]n all events, the shared aim of 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475) (observing that courts sometimes ask "whether the nonresident defendant 'purposefully directed' its activities at the forum state" or "'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state"). Next, "[t]he import of the 'arising out of' analysis is whether the plaintiff can establish that the claimed injury resulted from the defendant's forum-related activities." *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1284 (10th Cir. 2020) (quotation omitted). Finally, "[i]f the defendant's actions create sufficient minimum contacts, the court must then consider whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Eighteen Seventy*, 32 F.4th at 966 (alterations and quotations omitted).[3]

---

[3] Courts consider five factors in analyzing whether the exercise of personal jurisdiction "comport[s] with fair play and substantial justice:" "(1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1227 (10th Cir. 2021) (quotations omitted). Nevertheless, "instances where the exercise of personal jurisdiction offends fair play and substantial justice are rare." *Compañía*, 970 F.3d at 1289 (quotation omitted); *see also Hood*, 21 F.4th at 1227 ("[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that . . . other considerations would render jurisdiction unreasonable." (quoting *Burger King*, 471 U.S. at 477)).

2. <u>Plaintiff's Burden at the Pleading Stage</u>

Plaintiffs "bear the burden of establishing personal jurisdiction." *Id.* at 964. "[A]t this early stage in the litigation, in the absence of an evidentiary hearing, [plaintiffs] need only make a prima facie showing of personal jurisdiction." *Id.* "In other words, the plaintiff may defeat a motion to dismiss by presenting evidence—either uncontested allegations in its complaint or evidence in the form of an affidavit or declaration—that if true would support jurisdiction over the defendant." *Id.* (quotation omitted). "This showing is 'light.'" *Racher v. Lusk*, 674 F. App'x 787, 789 (10th Cir. 2016) (unpublished) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). Furthermore, "[a]ll factual disputes are resolved in favor of the plaintiff[ ] when determining the sufficiency of this showing." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).[4]

"Of course, even if personal jurisdiction is contested and found initially on the pleadings and by affidavit, it may be reviewed again at subsequent stages in the trial court proceedings as evidence accumulates." *Dudnikov*, 514 F.3d at 1069–70 n.3; *see also FDIC v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (observing that "whatever degree of proof is required initially, a plaintiff must have proved by the end of trial the jurisdictional facts by a preponderance of the evidence" (quotation omitted)).[5]

---

[4] "Few such solicitous rules apply in the district court when personal jurisdiction is assessed in an evidentiary hearing or at trial; in such cases, the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists." *Dudnikov*, 514 F.3d at 1070 n.4.

[5] The Court finds that, at this early stage in the proceedings, neither an evidentiary hearing nor jurisdictional discovery is necessary to resolve the Motion. *See*, *e.g.*, *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009) (noting that "district courts generally have broad discretion to manage their dockets" (quotation omitted)).

### B. Venue

#### 1. Where Venue is Proper

The question of venue "is generally governed by 28 U.S.C. § 1391." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). In relevant part, this statute provides that "[a] civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." § 1391(b)(2). "Under [this] provision, venue is not limited to the district with the *most* substantial events or omissions." *Emp'rs. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1165 (10th Cir. 2010) (emphasis in original). This provision "instead 'contemplates that venue can be appropriate in more than one district . . . [and] permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts.'" *Id.* at 1166 (quoting *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)).

Pursuant to § 1391(b)(2), courts "conduct a two-part analysis when reviewing challenges to venue." *Id.* "First, [courts] examine the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Id.* "Second, [courts] determine whether substantial 'events material to those claims occurred' in the forum district." *Id.* (quoting *Gulf Ins.*, 417 F.3d at 357). And if "a substantial part of the events or omissions giving rise to the claim occurred" in the forum district, § 1391(b)(2), then "venue is proper." *Atl. Marine*, 571 U.S. at 56.

#### 2. Transferring Venue

Even if venue is proper, courts may still consider "a motion to transfer [venue] under [28 U.S.C.] §1404(a)." *Id.* at 59. This provision states in relevant part that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court *may* transfer any civil action to any other district or division where it might have been brought." § 1404(a) (emphasis added).

8

"But courts have considerable discretion in determining whether or not to grant a transfer." *Stephens v. Alliant Techsystems Corp.*, 714 F. App'x 841, 845 (10th Cir. 2017) (unpublished); *see also Palace Expl. Co. v. Petroleum Dev. Co.*, 316 F.3d 1110, 1121 (10th Cir. 2003) (observing that the Tenth Circuit "will not overturn [a transfer] decision unless it was a clear abuse of discretion"); *Bartile Roofs*, 618 F.3d at 1170 (concluding that "the district court did not abuse its discretion in denying [a] motion to transfer" because the denial did not qualify as "arbitrary, capricious, whimsical, or manifestly unreasonable" (quotation omitted)).

"[A] district court considering a §1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. In the Tenth Circuit, courts weigh various "discretionary factors" when evaluating the convenience of parties and witnesses, including in relevant part:

(1) the plaintiff's choice of forum;[6]

(2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses;[7]

(3) the cost of making the necessary proof;[8]

(4) relative advantages and obstacles to a fair trial;

(5) difficulties that may arise from congested dockets;[9] and

---

[6] "Unless the balance is strongly in favor of the movant, the plaintiff's choice of forum should rarely be disturbed." *Bartile Roofs*, 618 F.3d at 1167 (quotation and alterations omitted). "The plaintiff's choice of forum receives less deference, however, if the plaintiff does not reside in the district." *Id.*

[7] "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Bartile Roofs*, 618 F.3d at 1169 (quotation omitted). "To demonstrate inconvenience, the movant must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Id.* (quotation and alterations omitted).

[8] "[T]he record [should] contain[] . . . evidence concerning the potential costs of litigating the case in [the current forum]." *Bartile Roofs*, 618 F.3d at 1169.

[9] "When evaluating the administrative difficulties of court congestion, the most relevant statistics are the median time from filing to disposition, median time from filing to trial, pending cases per judge, and average weighted filings per judge." *Bartile Roofs*, 618 F.3d at 1169.

> (6) all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Bartile Roofs*, 618 F.3d at 1167.  The "party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir.1992).  "Merely shifting the inconvenience from one side to the other, however, obviously is not a permissible justification for a change of venue." *Id.* at 966.

## IV. ANALYSIS

### A. The Court Has Personal Jurisdiction over Defendant

As explained below, the Court concludes that Plaintiff has satisfied his "light" burden, *Wenz*, 55 F.3d at 1505, of making a "prima facie showing of personal jurisdiction" over Defendant. *Eighteen Seventy,* 32 F.4th at 964.  In other words, Plaintiff has put forth "uncontested allegations" that "if true would support jurisdiction over [Defendant]." *Id.*

Plaintiff has alleged that he and the other Acidizer/Treaters performed underpaid overtime work "in the state of New Mexico"—specifically by repeatedly "work[ing] more than 40 hours in one or more individual workweeks" in New Mexico.  Compl. at ¶¶ 2.2, 2.3, 3.1–3.3, 5.20, 6.2, 8.  Although Defendant asserts that it conducts "roughly 75-80%" of its work outside of New Mexico, ECF 7-1 at ¶ 6, Defendant cites to no authority suggesting that a business cannot have "sufficient minimum contacts" with a state unless a certain threshold percentage its overall work was performed in that forum.  *See* Mot. at 3–4; Reply at 3–5.  Furthermore, the "sufficient minimum contacts" standard does not ask what percentage of a particular business's overall activity is performed in a forum state—but rather whether that business "*purposefully directed* its activities at the forum state." *Dudnikov*, 514 F.3d at 1071 (emphasis added).  In addition, Defendant does not contest the allegation that it employed Plaintiff to work in New Mexico—or that it required

10

Plaintiff to work "in excess of 40 hours each week" while he worked in this state. *See*, *e.g.*, ECF 7-1 at ¶ 8 (asserting only that "Plaintiff *primarily* [but not exclusively] worked for Defendant in Texas" (emphasis added)).

Assuming these allegations to be true, *Eighteen Seventy,* 32 F.4th at 964, the Court finds that Defendant purposefully directed its activities at New Mexico. In other words, Defendant's contacts with New Mexico—e.g., employing Plaintiff and others to work in New Mexico oilfields for over 40 hours a week on repeated occasions, *see* Compl. at ¶¶ 2.2, 2.3, 3.1–3.3, 5.20, 6.2, 8—were not "merely random, fortuitous, or attenuated contacts." *Dudnikov*, 514 F.3d at 1071 (quotation omitted). Indeed, the fact that Defendant maintains an operational yard in Lovington, New Mexico undergirds the Court's finding that Defendant purposefully directed *substantial* activities at New Mexico oil fields and the revenue sources they offer.[10] The Court further finds that Plaintiff's alleged injuries (e.g., underpayment for the overtime hours he worked in New Mexico) arose out of his "forum-related activities"—namely, working in oilfields in New Mexico for Defendant. *Id.* (quotation omitted). Accordingly, the Court concludes "the exercise of personal jurisdiction over [Defendant]" does not "offend[ ] traditional notions of fair play and substantial justice." *Eighteen Seventy*, 32 F.4th at 966. Consequently, Defendant is subject to this Court's specific personal jurisdiction.

### B. Venue Is Proper in This District

The Court concludes that "a substantial part of the events or omissions giving rise to [Plaintiff's] claim occurred" in New Mexico. 28 U.S.C. § 1391. As noted, although the majority

---

[10] For instance, assuming Defendant earns 20 to 25 percent of its revenue from New Mexico, this translates into *at least* $100,000 to $125,000 per year in revenue that Defendant is alleged to have earned from employing people like Plaintiff to work in New Mexico. *See* Compl. at ¶ 4.5 (alleging that Defendant meets the Fair Labor Standards Act requirement of having an "annual gross volume of sales made or business done of not less than $500,000" (quoting 29 U.S.C. § 203(s)(1)) (bracket omitted)).

of both Plaintiff and Defendant's work occurred in Texas, Defendant's alleged activities in New Mexico were substantial. Specifically, the allegation that Defendant required Plaintiff to work in New Mexico oilfields for over 40 hours a week on repeated occasions (without proper overtime payment) is a "substantial part" of Plaintiff's wage-and-hour claims. *See also Bartile Roofs, Inc.*, 618 F.3d at 1165–66 (noting that "venue is not limited to the district with the *most* substantial events or omissions" and that "venue can be appropriate in more than one district"). The Court therefore holds that venue is proper in the District of New Mexico.

### C. Venue Should Not Be Transferred

As with virtually every oilfield-based wage-and-hour case filed in this Court in the last fifteen years, this case offered at least two possible venues: the Districts of New Mexico and Western Texas. As explained below, the Court will exercise its discretion to deny Defendant's request that venue be transferred to the Western District of Texas "[f]or the convenience of parties and witnesses." 28 U.S.C. § 1404(a).

Defendant has not met its "burden of establishing that the [District of New Mexico] is [so] inconvenient" that a discretionary transfer of venue is necessary. *Scheidt*, 956 F.2d at 965. First, although Plaintiff might not reside in New Mexico, he did choose this forum. And this choice is entitled to at least some amount of deference—albeit "less deference" than the nearly-controlling deference that would exist if he resided here—but deference nonetheless. *Bartile Roofs*, 618 F.3d at 1167. Next, although a trial in Midland, Texas would provide some convenience to those Texas-based parties and witnesses (particularly in terms of travel time and gasoline and hotel expenses), Defendant has not specifically identified which if any particular witnesses(es) would (1) be "*unwilling* to come to trial," (2) provide "deposition testimony [that] would be unsatisfactory," or (3) require "compulsory process." *Id.* at 1169 (emphasis added); *see* Mot. at 6 (generally

12

suggesting that (unnamed) non-party witnesses, e.g., 17 former "Acid Treaters/Supervisors," might require compulsory attendance at a deposition or trial).  Furthermore, Defendant concedes that it "does not anticipate any issue with being able to obtain a fair trial" in this District.  *Id.* at 7.  Lastly, although "[t]he median time from filing to disposition for civil cases in the Western District of Texas" is almost two months faster than in this District, Defendant has not explained how this general statistical difference meaningfully affects its litigation strategy in this case.  *Id.* at 7–8.

The Court pauses to observe that the applicable provision of §1404(a) was enacted in 1948 and has not been amended since then.[11]  In the meantime, courts and litigants have learned to leverage technological advances to increase the speed and decrease the inconvenience of litigation.  Electronic filing, remote or video-conferenced depositions and hearings, and the modern "paperless" office are only a few examples.  Furthermore, although wage-and-hour cases typically last longer than other civil cases because of their collective/class certification dimensions, the parties' consent to a magistrate judge as the trial judge will ensure this case moves with greater alacrity.

In sum, after considering the pertinent "discretionary factors," *Bartile Roofs*, 618 F.3d at 1167, the Court concludes that venue should remain in this District.

## V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss [ECF 7] is **DENIED**.

---

[11] In 2011, §1404(a) was amended to also allow the transfer of venue "to any district or division to which all parties have consented"—but this provision is not applicable to the instant dispute.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*